So I understand that all council are present for today's oral argument calendar. And I'll dispense with calling the calendar. We'll therefore start with United States v. Ryan and Wood, 173919, 3969, and 18985. Thank you. Good morning, Your Honor. Good morning, Your Honor. May it please the court, my name is Todd Monahan. Thank you for having me here to orally argue this case. My client has asked me to seek an explanation for why he received a substantially larger sentence than his co-defendant when they are similarly situated. Let me briefly make several points. First of all, I want to call attention to the fact that having read the government's submissions, I acknowledge that these cases are not identical, but they are similar enough that I question why there should be a 14 month sentencing discrepancy between them. They are right- Excuse me, we're on abuse of discretion review, right, of the district court's sentencing decisions? Yes, Your Honor, it is. As I was saying, these cases arise from the same set of facts. They come from the same indictment. They are the same charges. They have the same top count. They were the same, they had the same sentence calculation by the US Probation Department. And at both trials, or I'm sorry, at both trial levels, the government argued for a 71 month sentence for both. Am I right also that Mr. Ryan was found guilty of five different counts and Mr. Wood of three? That is correct, Your Honor, and I would like to address that. I acknowledge that there are differences between these cases. I have not denied that fact. However, at the end of the day, like I said, these were both the same top counts. These are both the same set of facts. And as I understand it, while they were convicted of a different number of charges. The trial judge never actually addressed that in the record. He never addressed it, certainly in my case, and I don't see it in any of the record for Mr. Wood. To the extent that the trial judge did attempt to couch this difference in anything, was some anecdotal statements on the record, which government indicated that he wanted to give Mr. Wood the benefit of the doubt that he was employed. I think that's dealing with a fairly outdated idea of employment, because as I argued fairly strenuously in my brief, my client, Mr. Ryan, was a caretaker of his child while his significant other worked. So I submitted- Didn't the district court also allude to their different criminal histories and the different ages in which they first were convicted of various offenses? Your client at age 16, he got six months for a criminal possession of a drug. Age 18, criminal sale of a drug, and he was 23, I think, when sentenced. Whereas Mr. Wood was age 33 when sentenced, and he just had a car accident in which four friends were killed. He had a burglary conviction at age 21, and another offense at age 24. But there were differences that, wasn't the district court entitled to take those into account in assessing two guideline sentences, one at the bottom and one at the top? The district court is certainly entitled to take those differences into account. However, I don't believe the record reflects that anywhere. In either on the record, in open court for either case, or in the documents that are generated to go into the docket. Your complaint is the district court didn't do enough to explain the difference. That is one of my complaints, yes, your honor. But even in light of that, that is certainly an issue that I want to bring before this court. I still don't think that there is sufficient difference between these cases. As such would justify such a large sentencing discrepancy, 14 months. Who sold the gun? Who actually sold the gun to the CI? What was the evidence of that? I thought it was your client. According to the facts of the case, it was my client. But both individuals were convicted of it, and both- Well, but did you say that they were in the same position? That is, your client sold the gun, his friend, Mr. Wood, was a go-between, is that correct? That is my understanding. Why isn't that a sufficient difference right there? Because both individuals under federal sentencing would be responsible for the relevant conduct of each other. And given that they were both equal participants in this criminal enterprise- If I'm a seller of guns, is it impossible for a district court judge to determine that I'm more culpable than the person or people that I rely on to help me sell the guns? If I'm the main seller, isn't that a difference? It is a difference, yet it was never stated in the record. And there's nothing in this record that would indicate that this is specifically what Judge Kahn couched his sentences in. My client, if nothing else, is seeking some clarification of why the sentences were different. Like I said, I've never hid from the fact that these are somewhat different cases, but I do submit that they are much more similar than they are different. We could parse the record, we could try to find some minor differences, which I think has been done here, to justify what I believe was an arbitrary sentence difference. Was a contemporary objection made to this so that the judge could then and there provide what you seek? No, Your Honor, because my client was sentenced to 71 months before Mr. Wood was. So I didn't have the ability to make an objection at that time. All I could do at that point was to file for the appeal. Thank you very much. Thank you. Good morning, Your Honors. Kevin Louie Brown on behalf of Mr. Wood. My focus is just on the enhancement, the four level enhancement that the court gave under 2K2.1B6B. That section of the sentencing guideline says that if the defendant uses or possesses any firearm in connection with another, or ammunition in connection with another felony offense. There's no question he didn't use one, so the issue becomes whether he possessed one. Did he- We've got this case law, although I grant that doesn't seem to be any binding precedent. So it's in the context of summary orders largely. That says that if the sale is in close, or the gun is in close proximity to the drugs, for example. That is enough for the enhancement to apply. Well, the government relies upon two cases, the 6th and the 11th Circuit, Fletcher case in particular, which says that treats possession of the gun differently than how Your Honor framed it. It says the presence of a gun within a defendant's dominion and control during the drug trafficking offense. There's no, my client did not plead guilty to a gun offense in terms of selling a gun. That's not an accurate assertion. His offense was aiding and abetting in possession of, being a felony in possession of a firearm through aiding and abetting. All he did was he became aware that Mr. Ryan had a gun. He was moving and couldn't bring the gun with him, and he said that the CI could obtain a gun from him. He did not ever possess the weapon, Mr. Wood, never possessed it, never had it in his possession, never controlled it. Didn't he have knowledge then, though, that in making the connection between the confidential informant and Mr. Ryan, that the confidential informant had made sequential purchases in a very short time frame of significant amounts of heroin. And we have case law suggesting that he would have reason to infer that the gun would be used in connection with those significant quantity purchases. And therefore, part of drug transactions and would be used in connection with another felony offense. And that that is sufficient. Why is that wrong? Well, I don't think that shows his active participation. That's his awareness is not his active participation. The guideline commentary says that the enhancement applies to the firearm or ammunition facilitated or had potential to facilitate another felony offense. My client may have had knowledge of the existence of the gun and the fact that it was going to be transferred. But he didn't plead guilty to that. He was not found guilty of that. And it wasn't part of a transaction that he was directly involved in where he had- He was facilitating the transfer of the gun to someone who he had reason to believe was a drug dealer of significant quantities of heroin. Why isn't that a transfer in connection with where he had reason to believe that it would be used in connection with another felony offense? There's a slight difference. The gun, the firearm did not facilitate the drug offense. You're saying that my client did, but the gun did not. That's a separate consideration. But I'm saying that he would have reason to believe that the gun would be used in connection with other felony offenses, which would be the confidential informants sale of drugs. Since he had been participating in the acquisition of significant quantities of drugs, there would be reason to believe that the confidential informant was a drug dealer. These were not personal use quantities. So that would be the other anticipated sales of drugs by the confidential informant. That this transfer of a gun was taking place in connection with. Do you follow me? I think I do, Your Honor. But I think that the law is intended to say that the gun facilitated another offense, and point to that offense, and say here's the other offense. I mean, I really think the enhancement was created for, there's a drug deal, and one of the drug dealers has a gun in his pocket. Now, he may not use it, but he possesses it, he's got dominion and control over it. And probably enhances the dangerousness of the exchange between the two. There's no question about that. But this is like two completely separate, this is two separate transactions where the gun doesn't facilitate the drug offense. Somebody who's selling drugs says, I know a guy that's selling a gun, and introduces him, and then the person sells the gun. And that's a different, the gun doesn't make the other offense, the other particular offense, more dangerous under the circumstances of this case. Well, why isn't, I mean, as we're trying to explore the nexus between the presence of a gun and the drug sale, and what would satisfy that section or the in connection with requirement, why isn't it enough that the sale of the gun in this case makes it a little bit more palatable to sell the drugs? Well, so it's a sweetening the pot issue. You have, you provided a scenario where a drug dealer has got a gun with him. Obviously, that may facilitate the sale. But it may also be that if you sell guns, it makes it a little bit more of an attractive proposition to buy the drugs from this person. Why wasn't that enough here? I don't think that that's, that factual record was developed below, as your honor has stated it. I don't think it's that developed to be able to say that. I think that the record is, my client sold drugs. He said he knew somebody who had a gun. The CI went and purchased the gun from the other person. And my client never physically saw or had the gun or had possession of it. He made an introduction and- Under our law, mere presence of the weapon, unless it's inaccessible during a drug transaction, is the use of the gun in connection, is possession in connection with the drug transaction? Yeah, I believe if- You certainly have it present. Indeed, it's the subject of a transaction. I believe if we're to, if your honors are considering the argument by the government, that the reasoning of the 11th and 6th Circuit applies, the defendant, my client- It's second circuit law, the mere presence of a weapon. You don't have to flash it. You don't have to use it. But you have to have dominion and control over it. My client never had dominion and control over the weapon. He never did. He didn't, at any point in time. And it's not a conspiracy charge. Remind us of the facts. So, my client is clean for a period, has a problem, returns to drugs to support his habit, he's selling heroin to a CI. CI comes and says, geez, you know, he's working for the government, he says, I'd like a gun. He goes, well, I know a guy that has an apartment, he has to move, and his girlfriend won't let him take his gun with him. Maybe he can buy it from him. Makes the introduction, the CI goes over to the apartment with the guy to purchase the gun. My client does not have possession of the gun, does not touch it. Your client is there at the time of the sale, correct? Yes, yep. He's in the house, he goes in the house, and then leaves. And does not, there's some items in the pre-sentence report, which we disputed, as to who actually took the gun out of the house. And it was in a black bag when the CI arrived, it was in a black bag, a garbage bag. But at least under the Sixth Circuit's Henry case, this sweet in the pot theory would apply to your client. Yeah, I don't know, my client, my client, as awful as it is, sold heroin. He didn't sell guns, and he's not selling more heroin because this guy is able to buy a gun. He's not sweetening his pot. He's just saying, hey, you want something? I know a guy that's selling a gun. So he's not, I don't think he's, if he says, I got some heroin, and you know what, I'll give you a little bit more if you want to buy a gun, we'll throw a gun in, or we'll do a deal. That's not how it unfolded. I grant you that, I don't know that we've got clear precedent in the form of an opinion that deals squarely with this situation, but okay, we'll hear from- Okay, thank you, Your Honor. Thank you very much. Is that right, Mr. Silver? It's right that you'll hear from me, I must. With respect to Mr. Wood, that there's no clear precedent that clearly applies? Not from this court. But all of the cases that have addressed application of this enhancement when there is a simultaneous sale of drugs and a gun have reached the conclusion that the enhancement applies. And- How simultaneous was it? Was it literally at the same transaction, the same moment? Yes, yes. I would like to call the court's attention to the fact that this issue is pending in another case, which I think arises out of the same investigation and an appeal that was filed afterward, if I could just provide the court with the number of that case, it's 17-4015. Was that argued or not yet? Not yet, it was filed after this appeal was filed. And I know that the government made the court aware that this case is pending in that other case, but that was a later filing. I think it's wrong for counsel to argue that Wood did not have dominion and control over the gun, because I don't think that's a relevant factor. Clearly, this was relevant conduct of Mr. Wood, that the gun was sold in connection with the sale of the heroin. And because it's jointly undertaken activity, and therefore relevant conduct, and the fact that Mr. Wood pled guilty to possession of that firearm, that is the firearm that forms the basis of his felon in possession plea. He clearly had at least constructive possession of the firearm. And in any event, would be responsible for the conduct of Mr. Ryan. I would say even if Mr. Wood wasn't there, but he was. I think the easier question, as Judge Carney was discussing, is we can talk about possession of the firearm in connection with the simultaneous sale of the drugs, or we can look at the transfer of the firearm in connection with the anticipated drug activity of the confidential informant. And either prong is sufficient for application of the four level enhancement. And according to the- The anticipated drug activity is based on the repeated transactions and quantities? Is that right? Yes, Your Honor.  I'm from these defendants, not a terribly significant amount, but not a- But only Mr. Ryan was there, and Mr. Wood was not there on August 26th. Mr. Wood, I believe, showed up late to that sale, and Mr. Wood arranged that sale. But I do believe he showed up late. If I'm wrong, I'll ask the court for permission to provide a letter, but I'm fairly certain that's what happened. On September 2nd, about a week later, the informant bought 33 grams of heroin for $1,600. And then it was on September 9th that the informant bought 27 grams of heroin for $1,000 and the firearm. So that gave both defendants reason to believe that the gun might be used in furtherance of the drug activity of the confidential informant. And according to the application note to the enhancement, as well as the enhancement itself, that's sufficient for the enhancement to apply. With respect to- So what is it in the government's brief? And why is it that when you get up to the podium, you acknowledge that we have no clear law that deals with this issue precisely? I believe I say in my brief, Your Honor, that this court has yet to decide whether the enhancement applies in this particular circumstance, but that other circuits have found- No, no, I understand that. But what you are suggesting is that maybe we do have case law that clearly squarely deals with this issue. Well, I cited the Jones case in terms of the transfer prong. I'm not aware of a case from this circuit that squarely deals with this set of facts. If I gave the impression that I had such a case, I gave the wrong impression. The other thing I would say with respect to Your Honor's comment about sweetening the pot, is I read application note 14 to the guideline, the gun has to facilitate the drug transaction, or have the capacity, which is the wrong word, but- Potential. Potential, thank you, Your Honor, but you see the point. So it's not necessary that the pot actually was sweetened. It's enough that a purchaser of drugs might view the pot as sweetened if he was able to buy firearms from his drug supplier. With respect to Mr. Ryan's claim that the sentence imposed on him was substantively unreasonable, I would say, first of all, while he is correct that there are similarities, obvious similarities between his situation and that of Mr. Wood, there are differences. And I think the most striking difference, as Judge Lohier pointed out, is the gun was physically in the possession of Mr. Ryan when Mr. Wood suggested to the informant that he could purchase that gun from Mr. Ryan. And other factors that have been discussed, Mr. Ryan's youthful adjudication starting his criminal history at age 16 and up until the time of his arrest on these charges, and there are other smaller factors, like his absconding from parole and the like, but- And was the district court under any requirement to make a finding that Mr. Wood was not similarly situated to Mr. Ryan? I don't believe so. No one raised . . . I mean, the government did suggest- He couldn't raise it because he didn't know what the sentence was going to be. That's his point. Right. You did argue that they were similarly situated, didn't you? Yes. We, the government requested a sentence at the high end of the guidelines for both defendants. You're arguing that the court had the power to do this. Is there another question as to whether it was an abuse of discretion where this gun transaction was conceived and proposed by the government? There was no separate . . . There was separate payment and consideration, and the only way there was facilitation of the transaction is arranging for the drugs and the gun to be sort of one-stop shopping. It seems to be . . . I mean, I think your adversary's argument is it's an abuse of discretion, and it may be that the court had the power to do that, but that it may be an abuse of discretion. What do you think? Are you saying, Your Honor, that it was an abuse of discretion to apply the enhancement, or an abuse of discretion to sentence the two defendants differently? No. No, that it . . . to apply the enhancement. Well . . . I mean, you argue that technically speaking, it's a highly technical argument, and then the question is if it's available, the court doesn't have to apply it. I disagree, Your Honor, respectfully. First of all, I don't think it's a highly technical argument, and as I say, particularly with respect to the transfer of the firearm to an individual who Mr. Wood and Mr. Ryan have every reason to believe is a drug dealer. I don't see anything technical about that. There's nothing good about that. Nothing good, but I don't think this is a difficult technical guideline issue. Once the enhancement is found to be applicable, I don't believe the court has discretion not to apply it. I think it's Hornbook law that the court first has to determine the applicable guideline range, then the court can exercise its discretion, in my opinion, to say, well, you didn't have your hands on the gun, so I'm going to sentence you a little bit lower, or something like that. In fact . . . That is discretion. Here, for whatever reason, Mr. Wood got the benefit of the exercise of the court's discretion, because the court sentenced him at the low end of the guideline range. It could be. I mean, the court was not precise in explaining where and why it sentenced either defendant at the particular point it did within the guidelines. I would say briefly with respect to Mr. Wood's argument about the failure of the court to comply with Rule 32, that as this court has made clear, has to be reviewed, that claim has to be reviewed for plain error. Mr. Wood cannot establish that the result would have been different if the court had resolved the factual disputes. Mr. Wood never requested a variance or a departure from the guidelines. He did argue that the guideline level should be four levels lower without the enhancement, and then at sentencing, requested a sentence within that resulting guideline range of 30 to 37 months, but he never requested a departure or variance on any ground. He got the low end of the applicable guideline range if this court determines that the gun enhancement was properly applied, so I argue that he has not satisfied plain error review. I should apologize to the court when I re-read my brief and saw that there were page citations omitted where I had left stars . . . You're a former clerk of the Second Circuit Court of Appeals, are you not? Well, thankfully I can say I was a clerk when Judge Minor was on the district bench. Okay. It was painful and I apologize. No. No apologies needed. Thank you very much. We'll reserve the decision.